UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

    Plaintiff,

v.                                                Case No. 06-14891

                                                  HONORABLE AVERN COHN

J.T. BATTENBERG, III, PAUL FREE, JOHN BLAHNIK,
MILAN BELANS, CATHERINE ROZANSKI,

    Defendants.

_____/

## MEMORANDUM AND ORDER
## DENYING JOHN BLAHNIK'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 153)

### I. Introduction

This is a securities fraud case. Plaintiff, the United States Securities and Exchange Commission (SEC) sued Delphi Corporation (Delphi) and several of its senior officers, members of its accounting and treasury staff, as well an individual employed by a third party, for their actions resulting in Delphi materially misstating its financial condition and operating results in SEC filings and in offering documents. Following settlements with the SEC, the only defendants that remain are: J.T. Battenberg, Paul Free, James Blahnik, Milan Belans, and Catherine Rozanski, all of whom filed motions for summary judgment. Rozanski later withdrew her motion. The Court held a hearing on the motions on February 3, 2010. At the hearing on the summary judgment motions,

counsel for Blahnik stated that he intended to rely on the argument that he is entitled to summary judgment on the grounds that he cannot be primarily liable for violating § 10(b) of the Securities and Exchange Act or Rule 10b-5 because he did not directly make false statements to the investing public. The Court directed Blahnik to present his position in a letter. The SEC submitted a letter response. Blahnik submitted a second letter to which the SEC also responded. The matter is now ready for decision. For the reasons that follow, Blahnik's motion for summary judgment is DENIED.

## II. Background[1]

In approximately August of 2004, the SEC notified Delphi that it had issued a Formal Order of Investigation into matters underlying the complaint in this case. In connection with its investigation, the SEC issued subpoenas to numerous entities, including defendants.

Blahnik was a senior officer at Delphi. During the relevant time, he served as Treasurer and then Vice President of Treasury, Mergers and Acquisitions of Delphi. He reported to defendant Alan Dawes, who was Chief Financial Officer of Delphi. He is not a CPA. However, his positions required a sophisticated understanding of financial matters. In his positions, he oversaw the preparation of Delphi earnings releases and analyst and rating agency presentations that incorporated information concerning GAAP and non-GAAP measures of Delphi's cash flow and liquidity. From January 2000 to August 2001, Blahnik supervised defendant Milan Belans, a CPA, who worked in

---

[1]This Background is substantially taken from the Court's Memorandum and Order Denying Defendants' Motions to Dismiss, filed October 8, 2008 (Doc. No. 96) (Memorandum and Order).

Delphi's treasury department as Director of Capital Planning and Pension Analysis.

The SEC accuses Blahnik of involvement in activities which resulted in false statements in Delphi's 2000 Form 10-K, 2001 and 2003 offering documents, incorporating the 2000 Form 10-K, and Forms 8-K filed in 2002-2004.

The SEC specifically says that Blahnik had a hand in three schemes, the PGM Transaction with Bank One, the Cores and Batteries Transaction with BBK, and European Factoring. The events surroundings those schemes and Blahnik's purported role in each of them is well known to the parties and the Court. These events were set forth in the Court's October 8, 2008 Memorandum and Order and will not be repeated here.

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in

support of its opposition to the motion for summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.

IV.  Primary Liability/Scheme Liability

As the SEC pointed out at the hearing, Blahnik, and other defendants raised this direct involvement argument in the motions to dismiss, which the Court rejected.[2]  Indeed, in denying defendants' motion to dismiss, the Court stated:

> The SEC argues that although Blahnik did not sign the allegedly false SEC documents, he is nevertheless responsible for them because he signed key documents and took actions integral to the inflation of operating cash flow and net income numbers with the intended purpose that those materially misstated figures would find there way and be included in Delphi's public filings.  Blahnik's argument is the same as the one advanced, and rejected above, with respect to Kudla.  The fact that Blahnik did not have face to face interaction with investors or personally sign the SEC filings does not preclude a finding of primary liability.  Here, the SEC has alleged that Blahnik undertook to furnish materially false information about Delphi's financial condition for disclosure to Delphi's investors.  All of his actions, set forth above, the SEC alleges resulted in false or misleading SEC public filings.  As the SEC explains:
>> Blahnik directed Belans to enter financially-irrational transactions, with the sole purpose of feigning operating cash flow, inventory, and income improvements; he came up with a plan to bleed undisclosed factoring in over time to conceal from investors and rating agencies Delphi's failure to disclose it; he signed misleading documents on the inventory transactions; he omitted a material portion of Delphi's European Factoring from disclosures; and he manipulated Delphi's undisclosed European Financing; all with the purpose that the resulting false financial

---

[2]In this sense, Blahnik's argument could conceivably be viewed as motion for reconsideration under E.D. Mich. LR 7.1(h)(3) which provides in relevant part:
> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by implication.  The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

4

>     numbers be included in public filings, to mislead Delphi's investors about
>     the company's true financial condition.
>
> SEC brief at p. 31.

Memorandum and Order at p. 27-28.

As noted above, the Court addressed the argument in detail with respect to Judith Kudla, stating:

> . . . The Sixth Circuit has held that a person is not primarily liable for failure to disclose a material fact unless he had a duty to disclose that fact. SEC v. Coffey, 493 F.2d at 1304,1315 (6th Cir. 1974). The Sixth Circuit has said that if a defendant has "direct contacts" with the "other side," then they can be held primarily liable under Section 10(b). Id. The "other side" need not be investors, but may be entities involved in providing information to investors. Id. The Sixth Circuit has described "direct contacts" as follows:
>> Direct contacts require neither physical presence nor face to face conversation. A person undertaking to furnish information which is misleading because of a failure to disclose a material fact is a primary participant. Conversely, a person who does not undertake to furnish any information, and who is not aware of what information has been furnished, is under no duty to disclose material information in his possession.
>
> SEC v. Washington County Utility Dist., 676 F.2d 218, 223 (6th Cir. 1982).

Id. at p. 16-17. In other words, the SEC's theory of liability is that Blahnik participated in a scheme which had the purpose and effect of misrepresenting Delphi's financial statements. This is often referred to as scheme liability.

Blahnik says that under the Supreme Court's decision in Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148 (2008), he cannot as a matter of law be liable under a theory of scheme liability because he never communicated with investors about the transactions at issue.

Blahnik also relies on the Court of Appeals for the First Circuit's decision in SEC v. Tambone, No. 07-1385, 2010 WL 796996 (March 10, 2010) as additional support for his argument that he cannot be primarily liable for violating § 10(b) because he did not

directly make false statements to the public. Blahnik's reliance on these cases in misplaced.

First, Stoneridge was not an SEC enforcement action. It was a private securities class action brought by investors in a cable operator, Charter Communications, Inc. (Charter) against defendant, a supplier and customer. The Supreme Court addressed the "reliance" element required in cases brought under the implied private right of action under § 10(b). The Supreme Court held that the private right of action in Section 10(b) did not extend to certain customer/supplier companies alleged to have cooperated with a cable company's scheme to misrepresent its financial situation because none of the investor plaintiffs relied on the customer/supplier companies' statements or representations. The Supreme Court stated that no liability attached because plaintiff investors could not "be said to have relief upon any of [defendant's] deceptive acts in the decision to purchase or sell Charter's securities." Id. at 166-67. Importantly, although reliance is an element of a private right of action under Section 10(b), id. at 769, it is not an element in a section 10(b) enforcement action brought by the SEC. SEC v. Rana Research, Inc., 8 F.3d 1358, 1364 (9th Cir.1993). Therefore, as one district court put it, "where reliance is not an element of the claim, scheme liability remains a viable theory under which the SEC may bring civil claims." SEC v. Fraser, No. CV-09-00443, 2009 WL 2450508 at * 9 (D. Az. Aug. 11, 2009).

Stoneridge, contrary to Blahnik's assertions, did not reject or abandon scheme liability in SEC enforcement actions. The language in Stoneridge to which Blahnik cites, merely evinces the Supreme Court's concern that public and private rights of action not be conflated, as only the SEC can assert aiding and abetting liability. See Stoneridge,

directly make false statements to the public. Blahnik's reliance on these cases in misplaced.

First, Stoneridge was not an SEC enforcement action. It was a private securities class action brought by investors in a cable operator, Charter Communications, Inc. (Charter) against defendant, a supplier and customer. The Supreme Court addressed the "reliance" element required in cases brought under the implied private right of action under § 10(b). The Supreme Court held that the private right of action in Section 10(b) did not extend to certain customer/supplier companies alleged to have cooperated with a cable company's scheme to misrepresent its financial situation because none of the investor plaintiffs relied on the customer/supplier companies' statements or representations. The Supreme Court stated that no liability attached because plaintiff investors could not "be said to have relief upon any of [defendant's] deceptive acts in the decision to purchase or sell Charter's securities." Id. at 166-67. Importantly, although reliance is an element of a private right of action under Section 10(b), id. at 769, it is not an element in a section 10(b) enforcement action brought by the SEC. SEC v. Rana Research, Inc., 8 F.3d 1358, 1364 (9th Cir.1993). Therefore, as one district court put it, "where reliance is not an element of the claim, scheme liability remains a viable theory under which the SEC may bring civil claims." SEC v. Fraser, No. CV-09-00443, 2009 WL 2450508 at * 9 (D. Az. Aug. 11, 2009).

Stoneridge, contrary to Blahnik's assertions, did not reject or abandon scheme liability in SEC enforcement actions. The language in Stoneridge to which Blahnik cites, merely evinces the Supreme Court's concern that public and private rights of action not be conflated, as only the SEC can assert aiding and abetting liability. See Stoneridge,

552 U.S. at 162-63 ("Petitioner's view of primary liability makes any aider and abettor liable under § 10(b) if he or she committed a deceptive act in the process of providing assistance. Were we to adopt this construction of § 10(b), it would revive in substance the implied cause of action against all aiders and abettors except those who committed no deceptive act in the process of facilitating the fraud; and we would undermine Congress' determination that this class of defendants should be pursued by the SEC and not by private litigants ."). Indeed, Stoneridge elsewhere agreed that "if business operations are used, as alleged here, to affect securities markets, the SEC enforcement power may reach the culpable actors." Id. at 161.

The Supreme Court itself has held, in the context of an SEC enforcement action, that a non-speaking actor who engaged in a "scheme to defraud" used or employed a deceptive device within the meaning of Section 10(b). See SEC v. Zandford, 535 U.S. 813, 821-22 (2002) (finding that an SEC complaint alleging that a securities broker "engaged in a scheme to defraud" by misappropriating a client's securities stated a viable claim and should not have been dismissed, even though the broker made no affirmative misrepresentations). Other courts have also recognized that scheme liability survives Stoneridge. See, e.g., New York City Employees' Ret. Sys. v. Berry, 616 F. Supp. 2d 987, 995-98 (N.D. Cal. 2009) (distinguishing Stoneridge and holding that a complaint stated a proper claim for scheme liability); In re Micron Tech., Inc., Sec. Litig., No. CV-06-85-S-BLW, 2009 WL 453917, at *2-4 (D. Idaho Feb. 23, 2009) (explaining how Stoneridge does not undermine all scheme liability); Burnett v. Rowzee, 561 F. Supp. 2d 1120, 1125-26 (C.D. Cal. 2008) (finding a complaint's allegations insufficiently pled but explaining how scheme liability functions after Stoneridge and Simpson in the

7

context of a private right of action). Thus, Blahnik's argument that the SEC may not pursue a scheme theory of primary liability as a matter of law is unavailing.

Finally, in Tambone, the Court of Appeals for the First Circuit considered whether the meaning of the word "make" as used in Rule 10b-5(b) can be interpreted (1) to include using or disseminating a statement without regard to the authorship of that statement or, (2) to find that securities professionals who direct the offering and sale of shares on behalf of an underwriter impliedly "make" a statement, covered by the rule, to the effect that the disclosures in a prospectus are truthful and complete. The First Circuit said no as to both questions. Tambone, however, is not binding on the Court. It also conflicts with Sixth Circuit case law which holds that "[t]he requirement that the plaintiff allege that the defendant made a misrepresentation does not mean that the plaintiff must allege that the defendant communicated that misrepresentation directly to the plaintiff." City of Monroe Emp. Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 686 n.29 (6th Cir. 2005) (citations omitted).

In short, nothing in Blahnik's letters persuade the Court that he cannot be held primarily liable as a matter of law on the theory advanced by the SEC. Whether Blahnik's actions amount to a violation of the securities laws is a fact question based on the record which must be resolved at trial.

SO ORDERED.


Dated: April 8, 2010                    S/Avern Cohn
                                        AVERN COHN
                                        UNITED STATES DISTRICT JUDGE

**06-14891 SEC v. Battenberg, III, et al**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 8, 2010, by electronic and/or ordinary mail.

      S/Julie Owens
      Case Manager, (313) 234-5160