UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

    Plaintiff,

v.

PAUL FREE,

    Defendant.
_____/

Case No. 06-14891

HON. AVERN COHN

## MEMORANDUM REGARDING FINAL JUDGMENT AGAINST PAUL FREE

### I. Introduction

This is a securities fraud case. On January 13, 2011, a jury returned a verdict against J.T. Battenberg, III (Battenberg), former Chief Executive Officer of Delphi Corporation (Delphi), and Paul Free (Free), former Chief Accounting Officer of Delphi (Doc. 297). Four transactions from 2000 and 2001 falsely reported by Delphi were involved: GM Settlement Transaction (GM Transaction); Bank One - Precious Metals Transaction (PGM Transaction); BBK - Cores and Batteries Transaction (BBK Transaction); and EDS - $20 Million Dollar Transaction (EDS Transaction).

An overview of the case before the jury can be gained from a read of the Decision And Order Denying Paul Free's Renewed Motion For Judgment As A Matter Of Law Or, In The Alternative, For A New Trial (Doc. 356). Free was implicated in all four transactions.

A jury found for the plaintiff Securities and Exchange Commission (SEC) on its

claims against Paul R. Free for knowingly or unreasonably falsifying the books, records or accounts of Delphi, and making or causing to be made a materially false or misleading statement or omission to an accountant in connection with an audit, review or examination of Delphi's financial statements in connection with the (1) September 2000 settlement between Delphi and the General Motors Corporation, which was falsely reported to the public in Delphi's Form 10-Q for the third quarter of 2000, in Delphi's Form 10-K for 2000, and through other public communications; (2) Delphi's December 2000 transactions with BBK and Bank One, which were reported in Delphi's Form 10-K for 2000; and (3) Delphi's December 2001 transaction with EDS, which was reported in Delphi's 10-K for 2001; and on the SEC's claims for directly or indirectly making or omitting materially false or misleading statements with intent to defraud, or with reckless disregard for the truth, in connection with the purchase or sale of securities, by the use of the means and instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange; and aiding and abetting Delphi filing of false and misleading financial statements and disclosures, its failure to maintain accurate books, records and accounts, and its failure to maintain a proper system of internal accounting controls in connection with the BBK Transaction, Bank One Transaction and EDS Transaction.

Now before the Court is the SEC's Motion for Entry of a Final Judgment as to Defendant Free (Doc. 345). This motion raises the issue of remedies for Free's violations of the securities laws. The remedies are for the Court to decide. As the Court of Appeals for the Second Circuit explained, "[o]nce the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court

possesses the necessary power to fashion an appropriate remedy." *S.E.C. v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972). The remedies may include:

- a permanent injunction
- disgorgement
- pre-judgment interest
- civil penalties or sanctions

The issue of remedies has been fully briefed.

After careful review of the evidentiary record at trial and the added evidence proffered in the parties' papers relating to the motion, the Court decides the following.

## II.  Remedies

### A.  Permanent Injunction

In *S.E.C. v. Youmans*, 729 F.2d 413, 415 (6th Cir. 1984), the Court of Appeals for the Sixth Circuit listed seven factors a court should consider regarding a permanent injunction:

- the egregiousness of the violation
- the isolated or repeated nature of the violation
- the degree of scienter involved
- the sincerity of the defendant's assurance, if any, against future violations
- the defendant's recognition of the wrongful nature of his conduct
- the likelihood that the defendant's occupation will present opportunities (or lack thereof) of future violations
- the defendant's age and health

Applying these factors to Free's conduct in the four transactions, the SEC has established a case for a permanent injunction. A multitude of senior Delphi executives, outside accountants and an outside law firm were involved in the misreporting. Of those involved in the misreporting, Free was Dephi's Chief Accounting Officer and Controller. While he may not have been the so-called "mastermind" of the transactions, his role as gatekeeper was to ensure the integrity and accuracy of Delphi's accounting to protect the investing public. Although the jury did not find that Free acted with scienter as to the GM Transaction, they did so find with respect to BBK Transaction, the Bank One Transaction, and the EDS Transaction. The finding of scienter and multiple violations is significant. Moreover, permanent injunctions entered against several other defendants in the case whose roles were similar, in some instances greater and in some instances lesser, to Free's role. Therefore, a permanent injunction will enter.

### B.  Disgorgement

As to disgorgement, the parties urge the Court to direct disgorgement in the amount by which his bonus may have been decreased had Delphi properly accounted for the transactions. The consensus is that the resulting impact on Free's bonus would have decreased it to approximately $38,000.00. The Court will order Free to disgorge $38,000.00.

### C.  Prejudgment Interest

Including prejudgment interest in the remedy is a matter committed to the broad discretion of the Court. *See S.E.C. v. Conaway,* 697 F. Supp. 2d 733, 747 (E.D. Mich. 2010). As explained in *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996):

4

> In deciding whether an award of prejudgment interest is warranted a court should consider '(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.' (citations omitted).

The Court is satisfied that in the circumstances here, an award of prejudgment interest is not appropriate. While the jury's finding against Free is significant, the Court in its discretion believes that the other remedies imposed, including the permanent injunction, disgorgement, and civil penalties, fully and adequately satisfy the jury's finding and represent an appropriate penalty.

### D. Civil Penalties

As to penalties, 15 U.S.C. §78u(d)(3)(B) lists three tiers and corresponding amounts. Like the other remedies, a court may look at several factors in deciding the amount of a civil penalty, including .the egregiousness of the violations, the isolated or repeated nature of the violations, the degree of scienter involved, the deterrent effect given the defendant's financial worth, and other penalties arising from the conduct. *S.E.C. v. Yun*, 148 F. Supp. 2d 1287, 1295 (M.D. Fla. 2001)). In SEC enforcement actions, civil penalties are designed to punish securities violators and deter future securities laws violations. *S.E.C. v. Opulentica, LLC*, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007). The imposition of a penalty is a discretionary determination to be made in light of the particular facts and circumstances of the case. Unlike disgorgement, imposition of civil penalty requires a court to consider defendant's financial condition. *See SEC v. Universal Express*, 646 F. Supp. 2d 552, 567-68 (S.D.N.Y. 2009). The Court has weighed this factor heavily in fashioning the civil

penalty.

Given the jury's findings and considering all of the factors, the Court concludes that as to the GM Transaction, the first tier is appropriate, in the amount of $5,500.00.[1] The jury only found Free falsified books and records, they did not find him liable for fraud. As to the BBk Transaction, Bank One Transaction, and EDS Transaction, the second tier is appropriate. This is so because the jury did find Free acted fraudulently as to all of these transactions. The Court finds that $25,000.00 for each of the three transactions is appropriate, resulting in a second tier penalty in the amount of $75,000.00. In total, the amount of the penalty is $80,500.00.

### III.  Conclusion

Accordingly, the final judgment will total $118,500.00, representing $38,000.00 for disgorgement and $80,500.00 for penalties.


Dated: October 31, 2011         S/Avern Cohn
                                AVERN COHN
                                UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 31, 2011, by electronic and/or ordinary mail.

                                S/Julie Owens
                                Case Manager, (313) 234-5160

---

[1] The Court is mindful that it imposed a $16,500.00 civil penalty on Battenberg for the GM Transaction. In terms of financial conditions, Free and Battenberg are not the same, as evidenced by the substantial difference in their disgorgement amounts. Moreover, Battenberg is retired; Free needs to continue to work. Finally, unlike Battenberg, a significant second tier penalty is being imposed on Free.