UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**DELPHI CORPORATION, et al.,**<br><br>Defendants. | Case No. 2:06-cv-14891-AC-SDP |

**SECURITIES AND EXCHANGE COMMISSION'S**
**MOTION FOR AN ORDER DIRECTING THE TURNOVER OF FUNDS**
**DEPOSITED IN THE COURT'S REGISTRY BY DEFENDANTS**
**ALAN DAWES AND B.N. BAHADUR**

Plaintiff, the Securities and Exchange Commission ("SEC" or "Commission"), hereby submits this motion for an order, pursuant to Local Rule 67.1(b), directing the turnover of funds in the Court's Registry ("CRIS") to the SEC for remittance to the United States Treasury.

## BACKGROUND

On November 7, 2006, the Court entered Orders of Judgment against Alan Dawes (Document 10) and B.N. Bahadur (Document 11) in the above-captioned matter. Those Orders, to which Defendants Dawes and Bahadur consented, were

based on violations of various federal securities laws. The Orders imposed, *inter alia*, disgorgement in the amount of $253,000.00, prejudgment interest in the amount of $134,000.00 and a $300,000.00 civil penalty for Defendant Dawes, and disgorgement in the amount of $350,000.00, prejudgment interest in the amount of $139,257.00 and an $80,000.00 civil penalty, for Defendant Bahadur. Pursuant to the Orders, Defendants Dawes and Bahadur were to pay the disgorgement, prejudgment interest and civil penalties, totaling $687,000.00 and $569,257.00, respectively, to the Clerk of the Court.

Based on communications with the Court's Financial Administrator, the SEC believes that Dawes paid $687,000.00 to the Clerk of Court, which is currently being held in the CRIS, and Bahadur paid $569,257.00 to the Clerk of Court, which is also currently held in the CRIS. The SEC is now seeking an order directing turnover of the funds deposited by Defendants Dawes and Bahadur, plus any accrued interest.

## TURNOVER TO THE COMMISSION IS APPROPRIATE

A significant portion of the funds deposited with the Court by Dawes and Bahadur represented disgorgement and prejudgment interest. Although disgorged money is often distributed to victims of the violation in accordance with a plan proposed by the SEC and approved by the court, such a distribution is not required by statute, and may be impracticable "[1] where numerous victims suffered

2

relatively small amounts. . . . [2] where the victims cannot be identified . . . ; or [3] where there are no victims entitled to damages." *SEC v. Lorin*, 869 F. Supp. 1117, 1129 (S.D.N.Y. 1994) (citations omitted); *see SEC v. Drexel Burnham Lambert, Inc.*, 956 F. Supp. 503, 507 (S.D.N.Y. 1997), *aff'd sub nom. SEC v. Fischbach,* 133 F.3d 170 (2nd Cir. 1997). Thus, whether it is feasible and appropriate to effect such a distribution depends on whether there are identifiable victims who were injured by the violation and, if so, whether the costs associated with identifying them and distributing the money can be justified relative to the *pro rata* amounts the victims stand to receive. Where distribution to identifiable injured parties is not feasible or appropriate, the money disgorged by the defendant has been paid to the Treasury. *See, e.g., SEC v. Dimensional Entertainment Corp.*, 1996 WL 107290 (S.D.N.Y. 1996) (ordering payment to Treasury of disgorgement fund of $366,277 in complex fraud case involving unlawful distribution and manipulation of securities); *SEC v. Marcus Schloss & Co., Inc.*, 714 F. Supp. 100 (S.D.N.Y. 1989) (denying third party claim against disgorgement fund in insider trading case and ordering payment of disgorgement money to Treasury).

Moreover, the SEC submits that when distribution of registry funds is not feasible or appropriate, transfer of those funds to the U.S. Treasury is in the interest of justice, and is consistent with the Supreme Court's decision in *Liu v. SEC*, 140 S. Ct. 1936 (2020), which analyzed the remedy of disgorgement under Section

21(d)(5) of the Securities Exchange Act [15 U.S.C. §78u(d)(5)]. Although equity "generally" requires the SEC to return a defendant's gains to wronged investors for their benefit, the Supreme Court ruled that it is an "open question" whether depositing disgorged funds with the Treasury is permissible when distribution of collected funds to investors is "infeasible." *Id.* at 1948; *see id.* at 1947 ("Because the parties focused on the broad question whether any form of disgorgement may be ordered and did not fully brief [the] narrower question[]" whether courts must always "return funds to victims," "*we do not decide* [*that*] *here*.") (emphasis added). Accordingly, the Supreme Court expressly permitted lower courts to evaluate "in the first instance" whether an order depositing disgorgement funds with the Treasury in such circumstances would be "appropriate or necessary for the benefit of investors," 15 U.S.C. § 78u(d)(5), and consistent with "equitable principles." *Liu,* 140 S. Ct. at 1949; *see also SEC v. Blackburn,* 15 F.4th 676, 682 (5th Cir. 2021) ("*Liu* left open" the circumstances under which disgorgement may be disbursed to the Treasury "when it is 'infeasible to distribute the collected funds to investors'") (quoting *Liu,* 140 S.Ct. at 1948); *SEC v. Ahmed,* 2021 WL 916266, at *4 (D. Mass. Mar. 10, 2021) ("[T]he Supreme Court specifically reserved judgment on whether depositing funds with the Treasury 'where it is infeasible to distribute the collected funds to investors,' would be permissible."); *SEC v. Westport Capital Mkts.*, LLC, 2021 WL 2801626, at *9 (D. Conn. July 6, 2021)

4

(*Liu* "does not foreclose disgorgement" if distribution to investors is infeasible); *SEC v. Laura*, 2020 WL 8772252, at *4-5 (E.D.N.Y. Dec. 30, 2020) (noting that *Liu* does not preclude "an order remitting wrongful profits to the public rather than to an injured party"). Additionally, after *Liu* was decided, Congress amended the Exchange Act by adding Section 21(d)(7) [15 U.S.C. §78u(d)(7)], which expressly authorizes courts to award disgorgement in SEC actions.[1] Section 21(d)(7) omits the phrase "for the benefit of investors," which is present in Section 21(d)(5), and which the Liu Court construed as a "limitation[]" or "restriction[]" on a court's equitable authority to disburse collected disgorgement amounts. *Liu*, 140 S. Ct. at 1948-49. Because "it is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another," *Chicago v. Envtl. Def. Fund*, 114 S. Ct. 1588, 1593 (1994), Section 21(d)(7) provides a further basis for the Court to order that disgorged funds be sent to the Treasury.

In this case, disbursing the registry funds to the Commission, to be remitted to the Treasury, is consistent with *Liu* and Section 21(d)(7) of the Exchange Act, because distribution of the funds is infeasible. The violations committed by Dawes

---

[1] Section 21(d)(7) was added by the National Defense Authorization Act for Fiscal Year 2021, Public Law 116-283, §6501.

and Bahadur affected all shareholders in Delphi, Inc. at that time. Given the enormous number of shareholders and the difficulties in identifying them, the cost of an attempt at distribution would vastly exceed the amount of the funds obtained from Dawes and Bahadur. Indeed, since *Liu* was decided, various district courts have issued orders directing the remittance to Treasury of funds that could not be distributed to victims. *See, e.g., SEC v. Joseph R. Porche, et al.,* Case No. 8:10-cv-01165-DOC-RNB (C.D. Cal. April 4, 2022); *SEC v. Macquarie Capital, LLC*, Case No. 1:15-cv-02304-DLC, Doc. 37 (S.D.N.Y. July 30, 2021); *SEC v. Buck*, Case No. 1:17-cv-03984-JRS-TAB, Doc. 17 (S.D. Ind. Apr. 22, 2021); *SEC v. Nortel Networks Corp.*, Case No. 1:07-cv-08851-LAP, Doc. 114 (S.D.N.Y. Sept. 2, 2021).

As the Court observed in *Liu*, disgorgement is a "profit-based measure of unjust enrichment" that is measured by the defendant's "wrongful gain," rather than a victim's loss. *Liu*, 140 S. Ct. at 1943. Here, the Commission's inability to distribute disgorged funds does not entitle defendants to retain their ill-gotten gains. *See SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993) ("[A] disgorgement order might be for an amount more or less than that required to make the victims whole."). Indeed, turnover of the registry funds to the Commission for remittance to the Treasury serves the "foundational" principle of

equity that no person should "profit[] from their own wrong." *Liu*, 140 S. Ct. at 1943, 1948; *see Rubber Co. v. Goodyear*, 76 U.S. 788, 804 (1870).

In contrast, ordering the registry funds to be remitted to the wrongdoers who do not have a legitimate claim to that money would frustrate equity and would not be "for the benefit of investors" because it would reward conduct that the securities laws prohibit to protect investors. Further, equity recognizes that if distribution to a victim is not feasible, disgorged funds may be awarded to the *cy pres* (*i.e.*, nearest possible) alternative. *See Pearson v. Target Corp.*, 968 F.3d 827, 837 (7th Cir. 2020) (applying *Liu*). As discussed above, with regard to violations of the securities laws, "Congress made payment to the Treasury the *cy pres* alternative … to payment to victims of fraud when payment to the victims is infeasible." *SEC v. Custable*, 796 F.3d 653, 656 (7th Cir. 2015); *see also Kansas v. Nebraska*, 574 U.S. 445, 456 (2015) ("[W]hen federal law is at issue and 'the public interest is involved,' a federal court's 'equitable powers assume an even broader and more flexible character than when only a private controversy is at stake'").

Given the facts and circumstances of this case, distribution of the funds in the CRIS to the Commission for remission to the United States Treasury is the only feasible option. Other than this motion, the SEC is not aware of any claim to funds held in the CRIS. Therefore, it is appropriate to turn over the CRIS funds to the SEC for remittance to the United States Treasury.

Wherefore, the Commission respectfully requests that this Court enter the attached Proposed Order pursuant to Local Rule 67.1(b) and grant such and other relief as the Court deems just and proper.

Dated: July 7, 2022

                                        Respectfully submitted,

                                        */s/ John P. Tavana*
                                        John P. Tavana
                                        U.S. Securities and Exchange Commission
                                        100 F Street, N.E., Mail Stop 5631
                                        Washington, D.C. 20549
                                        (202) 551-7947 (Phone)
                                        TavanaJ@sec.gov

*LOCAL COUNSEL*:
DAWN N. ISON
United States Attorney
Eastern District of Michigan

SUSAN K. DeCLERCQ (P60545)
U.S. Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9149
susan.declercq@usdoj.gov