UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

            Plaintiff,

v.

DELPHI CORPORATION, J.T. BATTENBERG, III,
ALAN DAWES, PAUL FREE, JOHN BLAHNIK,
MILAN BELANS, CATHERINE ROZANSKI,
JUDITH KUDLA, B. N. BAHADUR, ATUL
PASRICHA, LAURA MARION, STUART DOYLE,
and KEVIN CURRY,

            Defendants.
_____/

Case Number 06-14891
Honorable David M. Lawson

**ORDER GRANTING IN PART PLAINTIFF'S MOTION TO ESTABLISH A FAIR FUND, TURN OVER ASSETS, AND APPOINT A DISTRIBUTION AGENT AND TAX ADMINISTRATOR, AND ESTABLISHING A DEADLINE FOR SUBMITTING A PROPOSED PLAN OF DISTRIBUTION**

On November 7, 2006, the Court entered judgments against defendants Alan Dawes and B.N. Bahadur for violations of various federal security laws caused by fraudulent accounting practices at the Delphi Corporation in 2000 and 2001. Pursuant to the orders, defendants Dawes and Bahadur paid to the Clerk of the Court disgorgement, prejudgment interest, and civil penalties totaling $687,000 and $569,257, respectively, presently held in the Court's Registry.

In its complaint, plaintiff United States Securities and Exchange Commission alleged that Delphi engaged in a pattern of fraudulent misconduct that mislead investors about its financial condition and operating results. Delphi's misconduct occurred between 2000 and 2004, but by the time that the SEC filed this case, Delphi was in bankruptcy and its stock, which previously had traded on the New York Stock Exchange, was traded on the over-the-counter market. Dawes and Bahadur entered their settlement agreements with the SEC on the same date this complaint was

filed. The disgorgement judgments against them each stated that they relinquished all their interests in the funds that they paid in to the Court. The judgments called for the funds to be held in the Court's Registry and contemplated that the SEC would "propose a plan to distribute the Fund subject to the Court's approval . . . pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002 [15 U.S.C. § 7246(a)]." ECF No. 10, PageID.130; ECF No. 11, PageID.133. That statute authorizes the SEC to use disgorged funds and civil penalties to compensate injured investors. *See Off. Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 82 (2d Cir. 2006) (Sotomayor, J.).

The SEC never proposed a distribution plan. Instead, in July 2022, it filed a motion asking that the funds in the Court's Registry be turned over to the United States Treasury. At that time, the SEC asserted that it was "infeasible" to identify the investors that were injured by the defendants' fraud in this case. The Court questioned that representation and the propriety of the remedy requested, and it appointed *amicus curia* to brief the issue.

In April of this year, after taking a second look at the task of identifying injured investors, the SEC moved to withdraw its turnover motion and suggested that it could propose a plan for distribution. The Court agreed to hold the turnover motion in abeyance and scheduled a status conference. Later, in lieu of a conference, the SEC filed the present motion to establish a Fair Fund, appoint certain administrators, cause a transfer of the Registry funds to the Fair Fund in its control, and establish a deadline for submitting a distribution plan. *Amicus curia* generally does not oppose that approach.

In a declaration filed with the SEC's April 2023 motion, SEC economist Thomas A. Dunn stated that he believed he could identify 236 investors that held 82% of Delphi's shares outstanding in the quarter just before key corrective disclosures were made that affected the stock price. Those

investors fairly could be considered as having been harmed by the fraud. Dr. Dunn also proposed a method to notify thousands of smaller institutional and retail investors that also were harmed. He said that he could draft a distribution plan, and that executing that plan would take about a year.

Congress and the courts have expressed a preference that disgorged funds and civil penalties be used to compensate injured investors and not to benefit the Treasury unless other options have been attempted. *See Liu v. SEC*, --- U.S. ---, 140 S. Ct. 1936, 1948 (2020) (discussing the "the SEC's obligation to award relief 'for the benefit of investors.'") (citing 15 U.S.C. § 78u(d)(5)). The SEC's request here aligns with that preference. The Court believes, therefore, that it is appropriate to direct the SEC to establish a Fair Fund under 15 U.S.C. § 7246(a), propose a plan to distribute the fund to investors harmed by the fraud that is "fair and reasonable," *see Creditors of WorldCom, Inc.*, 467 F.3d at 82, and appoint and provide compensation for the appropriate agents and administrators.

The SEC also asks the Court to transfer the Registry funds to the U.S. Treasury right away, asserting that it "would speed the distribution process" and would "avoid any delays in making necessary tax payments." However, the Court does not believe that prudence supports an immediate fund transfer. The judgments against Dawes and Bahadur were entered in 2006, and the funds have been available in the Registry since then. The SEC did not attempt to address disbursement or distribution until last year, and it still has not proposed a distribution plan. Alacrity does not appear to be its prime motivator. The Court will order the transfer of the funds from the Registry to the Fair Fund after evaluating and approving the proposed plan.

Accordingly, it is **ORDERED** that the plaintiff's motion to establish a Fair Fund and for other relief (ECF No. 409) is **GRANTED IN PART**.

It is further **ORDERED** that the plaintiff's motion to disburse funds to the U.S. Treasury (ECF No. 397) is **DISMISSED as moot**.

It is further **ORDERED** that plaintiff Securities and Exchange Commission shall establish a Fair Fund pursuant to Section 308(a) of the Sarbanes-Oxley Act of 2002, as amended by the Dodd-Frank Act of 2010, 15 U.S.C. § 7246(a).  The request to transfer the funds from the Court's Registry to the SEC is **DENIED**.  The request shall be revisited after the Court evaluates the SEC's proposed distribution plan, to be submitted.

It is further **ORDERED** that the SEC must file a proposed Distribution Plan with the Court and submit a copy to *amicus curia* **on or before August 8, 2023**.

It is further **ORDERED** that Miller Kaplan Arase LLP ("Miller Kaplan"), a certified public accounting firm is **APPOINTED** as Tax Administrator with respect to funds under this Court's jurisdiction in this case.  The Tax Administrator may submit an application for compensation for its reasonable services, costs, and expenses, not to exceed $15,000, to be paid from the Fund, at the conclusion of its duties.  Upon approval of the Distribution Plan, the Tax Administrator shall provide the following services:

1. Obtain a federal tax identification number for the Fair Fund as a Qualified Settlement Fund (QSF) under 26 U.S.C. § 468B(g);

2. Evaluate the Fair Fund's tax liability for each year since the defendants made their payments to the CRIS through the present;

3. Prepare and file federal and state income tax returns, as required, including returns for prior taxable years;

4. Where required, calculate estimated tax payments and potential penalties and provide information to the SEC so that payments may be made timely;

5. Make arrangements with the SEC or its agents to pay tax liabilities;

6. Calculate and recommend retention of a reserve for penalties and interest to be assessed as a result of any late filing of tax returns and late payment of taxes;

7. Determine and comply with tax reporting obligations of the QSF relating to distributions or payments to vendors, if applicable; and

8. Perform all administrative tasks necessary to the foregoing services.

It is further **ORDERED** that Joshua E. Braunstein, Senior Trial Counsel for the SEC, is **APPOINTED** as Distribution Agent of the Fair Fund. Upon approval of the Distribution Plan, the Distribution Agent shall provide the following services:

1. Implement the Court-approved Distribution Plan;

2. Oversee the administration of the Fair Fund;

3. Coordinate with the Tax Administrator to prepare accountings and to ensure that the Fair Fund complies with all related legal and regulatory requirements; and

4. Maintain accurate records concerning the Fair Fund.

The Distribution Agent shall serve without additional compensation than his remuneration as an employee of the SEC. However, the Distribution Agent may engage a third party, to be approved by the Court, to assist with distributing the Fair Fund by, for example, performing discreet administrative duties relating to the distribution, including conducting address searches, and issuing checks or wires. The Distribution Agent may seek reasonable compensation for the third party, not to exceed $8,600, to be paid from the Fund.

It is further **ORDERED** that, upon completion of the assignment, *amicus curia* may apply to the Court for reasonable compensation for work performed to be paid from the Fund.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:  August 1, 2023